UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONDRA G. DRUKER : | |
| Plaintiff : | CIVIL ACTION |
| v. : | |
| THOMAS JEFFERSON UNIVERSITY : | NO. 02-CV-2692 |
| and : | |
| BARBARA J. TURNER, M.D. : | |
| Defendants : | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**I.   INTRODUCTION**

Faced with numerous procedural and substantive defects in each of her claims, Druker responds by making speculative and conclusory allegations that are unsupported by the record, contradicting her prior deposition testimony, and by making legally unsupported arguments, none of which create a triable issue of fact as to any of Druker's claims. Defendants will address them in turn.

**II.   ARGUMENT**

    **A.   Druker's second charge does not save her Title VII claims in her first charge from being time-barred**

Druker admits that she did not file this action within 90 days of receipt of her right to sue letter on her first EEOC charge alleging religious discrimination, harassment and retaliation. (Druker's Brief, at p.11). Druker, nevertheless, argues that her <u>second</u> EEOC charge filed on

September 7, 2000, asserting retaliation based on her termination and interference with her efforts to transfer to another position at TJU timely preserved the earlier discrimination and harassment claims in her first charge. (Druker's Brief, at p. 7). This argument is contradicted by the undisputed content of the second charge and the EEOC's construction of it, and thus fails as a matter of law.

At the time Druker filed the second charge, long after her employment ended, the EEOC had been investigating her earlier discrimination and harassment charge for almost a year. Druker checked the "retaliation" box <u>only</u> on the second charge. (<u>See</u> Defendants' Exhibit 42). Druker's reference to discrimination and harassment in the second charge provided the background information for her retaliatory discharge/denial of transfer claim, which she testified to in her deposition was the subject of her second charge. (Druker Dep. at 76).

The EEOC construed Druker's second charge to complain only about the retaliatory discharge and denial of transfer. Specifically, in its determination, the EEOC states "Charging Party alleges that Respondent retaliated against her, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, when she was denied the opportunity to transfer to a vacant position and was ultimately discharged from her position." (Druker's Exhibit 2, bates 10341). Further, the EEOC states "[b]ased on this analysis, I have determined that the evidence obtained during their investigation establishes violations of Title VII based on retaliation when Charging Party was denied the opportunity to transfer to a vacant position and was ultimately discharged after she complained of discrimination." (Druker's Exhibit 2, bates 10342).

<u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 117 (2002) cited by Druker, is irrelevant to this issue. <u>National Railroad Passenger Corp.</u> addresses the time limits applicable to filing a charge of harassment based on a hostile work environment. This was the claim made

in Druker's first EEOC charge.  National Railroad Passenger Corp. establishes that when a charge alleges discrimination based on a discrete adverse employment action, such as the retaliation claim asserted in Druker's second EEOC charge, the charge must be filed within 300 days of the alleged unlawful employment practice to be timely.  National Railroad Passenger Corp. does not even address, let alone alter, the well-established law which required Druker to commence her action alleging discrimination and harassment within 90 days of receipt after right to sue letter.  Accordingly, the only Title VII claim of Druker which is not time-barred is the retaliatory discharge/denial of transfer claim.[1]

**B.   Druker's Title VII and PHRA claims of discrimination and retaliation based on her first charge fail because Druker cannot demonstrate an adverse employment action**

To avoid summary judgment on her generalized claims of discrimination and harassment unrelated to her discharge, Druker invents an adverse action not specifically referenced in her first EEOC charge:  the alleged refusal of Dr. Turner to perform a performance appraisal for her thereby depriving Druker of a potential salary increase.  (Druker's Brief, at p. 14).  As with many of her belated allegations, this new assertion is contradicted by the undisputed factual record.  Contrary to Druker's new assertion, it is undisputed that Dr. Turner **did** provide Druker with a performance appraisal for the period July 1998 through June 1999 and that Druker refused to sign or return it to Dr. Turner because she disagreed with it.  (Defendants' Exhibit 49).  In her deposition, when Druker was presented with her Employee Performance Appraisal for July 1998 to June 1999 produced by Druker from her files and containing her hand-written notes stating "**Turner gave me this draft** but agreed it was not accurate . . .", Druker acknowledged "I don't

---

[1]   Druker does not rebut Defendants' argument that her retaliation claims under the PHRA relating to her termination and transfer to another position at TJU are time-barred as reflected in Section V.E.1 of Defendants' Brief in support of the Motion for Summary Judgment.

recall the incident that she gave it to me, but if this says it, then it may well have happened." (Defendants' Exhibit 50, Druker Dep. at 447-49) (emphasis added).  Druker further testified that "it was a distinct possibility" that Dr. Turner gave her the draft Employee Performance Appraisal for review (Defendants' Exhibit 50, Druker Dep. at 452-53) and that she does not recall if she returned it.  (Defendants' Exhibit 50, Druker Dep. at 455).

Druker conveniently ignores this testimony and the performance appraisal itself, that Druker produced in discovery.  (Defendants' Exhibit 49, Druker bates 10249-10254).  Nevertheless, it is clear that Druker cannot rely on the alleged refusal of Dr. Turner to provide her with a performance appraisal and consequent denial of a potential salary increase to establish an adverse employment action.

Druker fails to identify any other conduct which rises to the level of a tangible, adverse employment action within the scope of her first charge.  Without any support in the record, Druker states that she was "promised" the role of Project Manager for a particular project and further speculates that the denial of this role deprived her of "both salary and title."  (Druker's Brief, at p. 14).  The denial of a particular role on a discrete project is not a tangible, adverse employment action.  (See Defendants' Brief, at p. 27).  Also, Druker's unsupported conclusion and speculation that, had she been given this role, she would have received an increase in salary and new job title must be disregarded as insufficient to preclude summary judgment.  A plaintiff cannot rely upon "unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Solomon v.

Society of Automotive Engineers, 2002 WL 1754409, at *1 (3d Cir. July 30, 2002). Defendants are entitled to summary judgment on the claims encompassed in the first EEOC charge.[2]

### C. The Court should reject Druker's attempt to create a triable issue of fact as to her retaliation claim relating to her efforts to transfer to another position at TJU

Druker does not contest that TJU's elimination of her position was for legitimate non-discriminatory reasons. Accordingly, Defendants are entitled to summary judgment on Druker's claim of retaliation based on the elimination of her position. Therefore, the only issue for this Court on Druker's retaliation claim is whether Druker has met her burden of establishing that TJU's stated reason for rejecting her for transfer to other positions is pretextual.

All of the people with whom Druker interviewed and who did not offer her a job submitted affidavits that deny having "spoken" with Dr. Turner about Druker. However, Druker suggests that Dr. Turner could have influenced their decision not to hire her by way of e-mail or voicemail messages because each affiant only denied having "spoken" with Dr. Turner about her. Druker's attempt to draw meaning from differences in wording is an exercise in semantics and it also ignores the operative paragraph in each affidavit providing a legitimate, non-discriminatory reason for not offering a position to Druker. It is Druker's burden to show that communications from Dr. Turner to these decision-makers occurred, not to imagine such communications. A plaintiff cannot rely upon "unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Solomon v. Society of Automotive Engineers, 2002 WL 1754409, at *1 (3d Cir. July 30, 2002).

---

[2] Druker's claim that Dr. Turner retaliated against her by refusing to provide a reference, which she pinpoints as occurring on November 18 (Druker's Exhibit O) after the first charge was filed, is an element of Druker's claim for retaliatory denial of transfer, a claim that will be separately addressed.

> D. **Druker fails to establish a prima facie case of religiously hostile work environment under Title VII and the PHRA**
>
> 1. **Druker's attempt to characterize non-religiously tinged actions as discrimination motivated by her religion to satisfy the first <u>Andrews</u> prong of a religiously hostile work environment should be rejected**

Druker claims that the handful of allegedly discriminatory remarks which Dr. Turner made regarding her observance of Jewish holidays is sufficient under <u>Andrews</u> to establish that each and every one of the non-religiously tinged incidents between the two of them was motivated by alleged anti-Semitism. This is truly a perversion of <u>Andrews</u>. Courts must look to the totality of the circumstances to determine whether facially neutral comments or conduct can reasonably be deemed to be motivated by discriminatory animus. <u>See</u>, <u>e.g.</u>, <u>Gharzouzi v. Northwestern Human Servs.</u>, 225 F. Supp.2d 514, 534-35 (E.D. Pa. 2002) (holding that one could not reasonably find that certain facially neutral comments by plaintiff's supervisor were motivated by discriminatory animus even though supervisor also made explicit statements about plaintiff's national origin, culture and accent.); <u>Koschoff v. Henderson</u>, 109 F. Supp.2d. 332, 346-47 (E.D. Pa. 2000) (conducting fact-intensive analysis to determine whether conduct that was not of a sexual nature was intentional discrimination motivated by plaintiff's gender); <u>Al-Salem v. Bucks County Water & Sewer Auth.</u>, 1999 WL 167729, at *5-7 (E.D. Pa. Mar. 25, 1999) (holding that one could not reasonably find that facially neutral comments or conduct by supervisor, including delay in promotion, loss of use of a truck, and requirement that he sign training and briefing sheets, were motivated by plaintiff's race, religion of national origin, despite evidence of other racially or ethnically offensive comments).

Verbal harassment, no matter how unpleasant and ill-willed, is not prohibited by Title VII if not motivated by the plaintiff's membership in some protected group. <u>See</u> <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80 (1998). Mistreatment that is not motivated by

the plaintiff's protected class does not create a hostile environment and conduct motivated by a bad working relationship is not prohibited by Title VII.. See Koschoff, 109 F. Supp.2d. at 346; Gharzouzi, 225 F. Supp.2d at 534. Moreover, discriminatory "comments that are sporadic or part of casual conversation do not violate Title VII." Al-Salem, 1999 WL 167729, at *6-7. The first prong of the Andrews test does not require a factfinder "to peer inside the harasser's mind," but "merely requires a showing that the offender's behavior was . . . based on a protected category." Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 277-78 (3d Cir. 2001).

Druker characterizes conduct as intentional discrimination based on her religion, when the conduct itself is not discrimination at all or when there is no evidence in the record to conclude that the conduct was motivated by Druker's religion. For example, in her Brief, Druker states that Ms. Wilson's playing loud Christian music is evidence of a religiously hostile work environment. (Druker's Brief, at p. 19). Aside from the fact that Druker testified only that "at one point [Ms. Wilson] blasted Christmas music" (Druker Dep. at 201), this conduct cannot reasonably be deemed intentional discrimination and there is no evidence that Ms. Wilson's conduct was motivated by Druker's religion. Similarly, Druker's statement that she heard Ms. Wilson say "about two weeks ago" and "Jewish" is simply not evidence of intentional discrimination on any basis, including Druker's religion. (Druker's Brief, at p. 19).

In addition, Druker characterizes as intentional religious discrimination, numerous non-religious work related incidents. For example, Druker argues that the October 1998 incident relating to her efforts to obtain coverage for her receptionist duties is evidence of a hostile work environment (Druker's Brief, at p. 18). However, there is not a shred of evidence that this incident was motivated by Druker's religion, especially the way Druker describes it as being

"caught in the middle" of a dispute between Dr. Turner and Louis. Further, the patently obscene note Druker found on her chair does not contain any religious overtones nor can Druker tie it to any of her allegedly anti-Semitic co-workers. (Druker's Exhibit F). Therefore, none of these incidents can transform Druker's religious discrimination claim based on a handful of allegedly insensitive comments into a hostile work environment claim.

    **2.    Druker's attempt to embellish the record or contradict her prior testimony to establish that the alleged religious harassment was "pervasive and regular" should be rejected**

Faced with the reality that the handful of religiously tinged comments made to her by Dr. Turner fall woefully short of what is necessary to constitute a religiously hostile work environment, Druker submits a self-serving Declaration in which she attempts to embellish the record through new allegations of religious discrimination not mentioned in four days of examination and outright contradictions with respect to other incidents.

For example, although Druker testified in her deposition that she did not consider questions about whether she was Jewish to be evidence of religious discrimination (Druker Dep. at 115-16, 199-200), Druker points to such comments in her brief as evidence of religious discrimination. (Druker's Brief, at p. 17). Although Druker testified that none of her co-workers ever used a religious epithet during her employment at the Center (Druker Dep. at 127-28), Druker now states in her Declaration that she was subjected to anti-Semitic slurs. (Druker's Brief, at p. 19). Further, Druker testified in her deposition that Dr. Turner agreed it was inappropriate for a co-worker to put religiously proselytizing material in her mailbox and that she was not unhappy with Dr. Turner's response to this incident (Druker Dep. at 135-38) and that Dr. Turner was "dismayed" about the memorandum defaced with a swastika and everyone to whose attention she brought the memorandum, including Dr. Turner, TJU's Security and TJU's Human Resources, believed the defacement was totally inappropriate. (Druker Dep. at 138-39, 141;

Exhibit 8). In contrast, Druker now states in her Declaration that Dr. Turner and TJU exhibited a "permissive attitude" towards swastikas and Christian proselytizing materials. (Druker's Brief, at p. 19).

Druker's statements in her Declaration and Brief which are inconsistent with her sworn deposition testimony must be disregarded in deciding this motion. See Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a non-movant's affidavit's contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material facts exist.").

### E. Druker's PHRA claims against Dr. Turner should be dismissed

Druker's sole argument for denying summary judgment to Dr. Turner on her PHRA claims against Dr. Turner is that, as a supervisor, she can be liable for aiding and abetting discrimination committed by others. (Druker's Brief, at p. 26).[3] Druker apparently concedes that to the extent Dr. Turner is alleged to have directly engaged in discrimination or retaliation, Dr. Turner cannot be liable as an aider and abettor and must be dismissed as to Druker's PHRA claims. Dici v. Commonwealth, 91 F.3d 542, 552-53 (3d Cir. 1996). In this case, it is obvious from everything in Druker's testimony contending that Dr. Turner is an alleged harasser and retaliator, that she is not an alleged aider and abettor. Druker does not identify one person besides Dr. Turner who engaged in direct acts of retaliation, religious discrimination or harassment. At best, Druker claims that she complained to various people about religious discrimination by Dr. Turner, but that they refused to do anything about it. Thus, Dr. Turner is not in the same position as defendant Monaco in Dici, as Druker alleges. (Druker's Brief, at p. 26). The Dici court reversed summary judgment as to Monaco because of his alleged knowledge

---

[3] Druker does not dispute that Dr. Turner is not subject to personal liability for violation of Title VII.

of discrimination by others and failure to take action to stop it, but Monaco was not the alleged perpetrator of the discrimination.

Accordingly, Dr. Turner reiterates her request for summary judgment on the PHRA claims against her.

### III. CONCLUSION

Defendants respectfully request that their Motion for Summary Judgment be granted in its entirety.

        Robert M. Goldich, Esquire
        Caroline M. Austin, Esquire
        WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
        1650 Arch Street - 22nd Floor
        Philadelphia, PA 19103-2097
        (215) 977-2152/2336

        Attorneys for Defendants

Dated: October 29, 2003

**CERTIFICATE OF SERVICE**

      I, Caroline M. Austin, hereby certify that on October 29, 2003, I caused a true and correct copy of the foregoing Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment to be served via first class mail, postage pre-paid to the following:

        William H. Ewing, Esquire
        Eckert Seamans Cherin & Mellott, LLC
        1515 Market Street, 9th Floor
        Philadelphia, PA 19102

        Caroline M. Austin, Esquire