IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONDRA DRUKER | : CIVIL ACTION |
| | : |
| v. | : |
| | : No. 02-2692 |
| THOMAS JEFFERSON UNIVERSITY, et al. | : |

**MEMORANDUM**

March 7, 2005                                                                                                         Ludwig, J.

This is an employment action filed by plaintiff Sondra Druker under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 20003, et seq., and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., for intentional discrimination, harassment and retaliation. Specifically, the complaint asserted retaliation claims under Title VII (Count I); harassment and discrimination under Title VII (Count II); discrimination and retaliation claims (Count III); and harassment and hostile work environment claims under the PHRA (Count IV).[1] Plaintiff's employer was defendant Thomas Jefferson University, and her supervisor was Barbara J. Turner, M.D., who was carrying out a research grant and who left TJU when the performance of the grant was transferred to another institution.

On August 12, 2004, defendants' motion for summary judgment was granted, Fed. R. Civ. P. 56,[2] and plaintiff's appeal followed. Thereafter, the Court of Appeals placed the case in its

---

[1] The complaint also alleged claims for negligent supervision (Count V) and defamation (Count VI). In response to defendants' motion for summary judgment, plaintiff agreed to dismiss them. See "Plaintiff's Brief Opposing Motion for Summary Judgment," at 26.

[2] "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law' . . . . The moving party bears the burden to show an absence of any genuine issue of material fact and can meet this burden by showing that the non-moving party 'has failed to produce evidence sufficient to establish the existence of an element essential to its case.'"

mediation program, but the mediation did not take place. Currently pro se, plaintiff at one time had the assistance of appointed counsel.

The evidence,[3] viewed most favorably to plaintiff, as set forth in her Declaration dated October 14, 2003, is as follows:

Beginning in February 1997, plaintiff joined TJU's Center for Research in Medical Education and Health Care as Dr. Turner's administrative assistant. Later, her title was changed to "Clinical Research Assistant/Coordinator." Plaintiff's Declaration at ¶¶ 3, 5. Her salary was paid from Dr. Turner's research grants.[4] Plaintiff felt she was treated differently from other employees at the Center. Upon her arrival there, other employees asked her if she was Jewish. Id. at ¶ 13. Other support personnel covered the Center's phones and reception desk for each other, but not for her. Id. at ¶ 14. They also refused to help out plaintiff so she could attend a professional conference. Id. at ¶ 22. One employee played loud "Christian" music, and plaintiff once heard her use the term "fucking Jew." Id. at ¶¶ 15, 16. Plaintiff's "Star of David" disappeared from her desk. Id. at ¶ 17.

In January 1998, plaintiff found a poster in an elevator on which someone had drawn swastikas. She reported the incident to Dr. Turner and Human Resources and TJU Security, but to her knowledge, nothing was done to identify and punish the perpetrator. Id. at ¶ 4.

In September 1998, Dr. Turner at first delayed approval of plaintiff's request for time off for

---

Santana Products, Inc. v. Bobrick Washroom Equipment, Inc., __ F.3d __, 2005 WL 293473, at *5 (3d Cir., Feb. 9, 2005).

[3] The record on summary judgment also consists of documents produced in discovery by both plaintiff and defendants, deposition transcripts of the parties and witnesses for both parties, affidavits submitted by defendants, and supporting documents submitted by plaintiff.

[4] Three other support personnel worked at the Center, reporting to different physicians. Plaintiff was the only one who reported directly to Turner.

2

Rosh Hashanah and Yom Kippur. Upon plaintiff's return to work, Dr. Turner asked, "So, do you people have any more god-damned holidays or what?" Id. at ¶ 19. When plaintiff reported this remark to TJU's Human Resources Department, Dr. Turner began scrutinizing how plaintiff spent her time - in contrast to the less stringent monitoring of other support personnel by their supervisors. Id. at ¶¶ 20, 21. She also showed displeasure with plaintiff's work. Id. at ¶ 25.

In November 1998, plaintiff filed a written complaint with TJU's EEOC coordinator, who told her to give the EEOC "her best shot, but you're not going to win because . . . [the Managing Director of the Center] is Jewish." Id. at ¶ 29. She also advised plaintiff to find other employment outside of TJU, but otherwise did not respond to plaintiff's complaint. Id. Later that month, plaintiff found an extremely vulgar, sexually explicit note in her office chair. She reported the incident; no action was taken. Id. at ¶ 30.

In December 1998, Dr. Turner required plaintiff to cancel her Christmastime vacation to assist with preparation of a grant application, remarking, "Well, Christmas isn't exactly your holiday so you don't have your heart set on it. It's not like Santa's coming to your house." Id. at ¶ 33. Other employees were permitted to take vacation during that week. Id. at ¶ 34. Plaintiff was also required to work on Saturday, January 2, 1999, the Jewish Sabbath, to complete the application. Id. at ¶ 35.

In February 1999, plaintiff complained again to TJU's EEOC coordinator. No change occurred in Dr. Turner's attitude towards her. In June 1999, she filed a charge with the EEOC, claiming harassment and discrimination. Id. at ¶¶ 37, 38. Dr. Turner became angry when plaintiff informed her of the charge. She did not invite her to a farewell lunch for a colleague. Also, she hit her on the head to get her attention while plaintiff was on the telephone. Id. at ¶¶ 39-41.

Eventually, plaintiff spoke with Dr. Geno Merli, Division Director of General and Internal

3

Medicine, to whom Dr. Turner reported, about the continuing discrimination. Dr. Merli suggested that plaintiff submit her resume for a job that might be opening up in a new research center. Id. at ¶¶ 44-45. Dr. Turner found out about the meeting and told plaintiff, "That avenue is closed" - which plaintiff understood to mean that Dr. Turner would prevent her from getting the job referred to by Dr. Merli, or any other job at TJU. Id. at ¶ 46.

In late October, 1999, plaintiff learned that Dr. Turner had accepted an offer to transfer her research grant to the Hospital of the University of Pennsylvania. Id. at ¶¶ 47. Shortly thereafter, on November 15, 1999, plaintiff amended her EEOC charge to include a claim for retaliation based on the treatment she experienced after initially informing Dr. Turner of the charge. See Charge 170A00980, Def. Exhibit 24. In early December 1999, plaintiff received formal notification that her job would be terminated. Plaintiff's Declaration at ¶ 47. Dr. Turner offered positions at HUP to others on her staff, and assisted others to obtain positions, but did not do so for plaintiff. She did not give plaintiff a reference. Id. at ¶ 48. Plaintiff's efforts to obtain a position at TJU were not aided by TJU's HR department, id. at ¶¶ 51-52. She submitted resumes or interviewed for six positions; she was not hired. On December 31, 1999, plaintiff's employment with TJU was terminated.[5] On September 7, 2000, plaintiff filed a second EEOC charge claiming retaliatory discharge and refusal to assist her in finding a new position at TJU. See Charge 170A01829, Def. Exhibit 42.

On January 29, 2002, plaintiff, pro se, filed for a writ of summons in the Court of Common Pleas of Philadelphia County and, on April 5, 2002, filed a complaint. On May 6, 2002, the action

---

[5] In January 2000, plaintiff obtained employment at Wyeth Laboratories, earning more than at TJU. Subsequently, she became employed by AstraZeneca, also earning more than at TJU. Plaintiff's dep. at 405-07.

was removed to this court.[6]

Summary judgment was granted in favor of defendants for the following reasons.

Defendants challenge the Title VII claim for discrimination and harassment (Count II) as time-barred because plaintiff's lawsuit was not filed within 90 days after her receipt of the EEOC right-to-sue letter.[7] Plaintiff concedes this point as to her first-filed charge - No. 170A00980. Plaintiff's Brief at 11; September 27, 2001 Right-to-Sue Letter, Exhibit 44; Writ of Summons, time-stamped January 29, 2002, Exhibit 47. However, she asserts that these claims are encompassed within her second-filed charge - and because she filed a timely suit on that charge, none of her claims is time-barred.[8] Defendants accurately counter that the discrimination and harassment claims are not set forth in the second-filed charge. The EEOC forms completed by plaintiff confirm that the second-filed charge, Charge 170A1829, is directed only to the alleged retaliatory termination of plaintiff's position and TJU's refusal to transfer her to a different position within TJU.[9] The right-to-

---

[6] Jurisdiction over the Title VII claims (Counts I and II) is 28 U.S.C. § 1331; supplemental jurisdiction over the PHRA claims (Counts III and IV) is 28 U.S.C. § 1367.

[7] 42 U.S.C. § 2000e-5(f)(1); Johnson v. Super Fresh Food Markets, Inc., 1998 WL 372396, at *4 (E.D. Pa., May 29, 1998, aff'd, 178 F.3d 1279 (3d Cir. 1999), cert. denied, 528 U.S. 936 (1999)(citations omitted).

[8] Plaintiff filed two claims with the EEOC - one while she was still employed at TJU alleging discrimination/harassment based on age, race and religion, and retaliation for complaining of the alleged discrimination/harassment (Charge No. 170A00980), see Amended Charge of Discrimination, Def. Exhibit 24, and one filed well after she had left TJU alleging retaliatory termination and refusal to permit her to transfer to another position at TJU (Charge No. 170A1829). See Charge of Discrimination, Def. Exhibit 42.

[9] Plaintiff is correct that Charge No. 170A01829 refers to her discrimination and harassment claims. However, the references to these claims and the charge previously filed are plainly meant to be context for the new retaliation charge. See Def. Exhibit 42 ("Since making my initial complaints of discrimination and retaliation to Dr. Turner's superiors and other authorities at TJU, and subsequent to filing my Charges of Discrimination, TJU has retaliated

5

sue letter issued for her second-filed charge does not revive charges included in the first-filed charge, which were not the subject of a timely lawsuit, Johnson v. Super Fresh Food Markets, Inc., 1998 WL 372396, at *4 (May 29, 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999), cert. denied, 528 U.S. 936 (1999) (citations omitted). For these reasons, plaintiff's Title VII claim for discrimination and harassment was time-barred.

Furthermore, according to defendants - and as plaintiff concedes - her PHRA retaliation claim (Count III) is also time-barred, having not been filed within 180 days after her December 31, 1999 termination. See Charge No. 170A1829, filed 9/6/00, Exhibit 42. "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRA within 180 days of the alleged discrimination. . . . If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA. Pennsylvania courts have strictly interpreted this requirement." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997), citing 43 Pa.C.S.A. § 959(h); Vincent v. Fuller Co., 616 A.2d 969, 974 (Pa. 1992). Plaintiff admits that "her second charge was filed too late to assert additional claims of retaliation" not included in her first charge.[10]  Plaintiff's brief at 25-26.

---

against me by denying me the ability to transfer to vacant positions and by terminating my employment on December 31, 1999.") (emphasis added). Additionally, in the "Cause of Discrimination" section of the "Charge of Discrimination" form, plaintiff checked only the "Retaliation" box on the form for Charge No. 170A01829, though she had checked the "Sex," "Religion" and "Retaliation" boxes on the form for Amended Charge No. 170A00980. See Def. Exhibit 24. See also 9/24/01 EEOC Determination on Charge No. 170A01829, Pltf. Exhibit 2 ("Charging Party alleges that Respondent retaliated against her . . . when she was denied the opportunity to transfer to a vacant position and was ultimately discharged from her position.")

[10] Plaintiff amended her first charge on 11/15/99 to include retaliation, see Def. Exhibit 24, but this could not have included charges for retaliatory termination and refusal to permit plaintiff to transfer to a new position, all of which occurred later.

6

As to Count I, alleging retaliation in violation of Title VII, defendants contend that plaintiff did not establish a prima facie case of retaliation and, further, did not show that either the legitimate, non-discriminatory reasons for plaintiff's termination or for her inability to obtain another position at TJU proffered by defendants, were pretextual. In order to prevail on her retaliation claim, plaintiff must produce evidence of a causal link between her engagement in a protected activity and an adverse employment decision. Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991), citing Jalil v. Advel Corp., 873 F.2d 701, 708 (3d Cir. 1989), cert. denied, 493 U.S. 1023 (1990). Familiarly, once plaintiff has done so, "the burden 'shifts to defendant to articulate a legitimate, non-discriminatory reason for its conduct.'" Id., quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The timing of the adverse employment action in relation to the protected activity may suggest a causal connection, but will not create an inference of one. Id. See also Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997); Delli Santi v. CNA Ins. Co., 88 F.3d 192, 199 n. 10 (3d Cir. 1996).

While plaintiff may have adduced a prima facie case of retaliation, it is undisputed that her termination was the result of Dr. Turner's decision to leave TJU and join HUP.[11] Plaintiff offers no evidence of pretext on this issue.

As to plaintiff's inability to obtain another position within TJU, assuming there was a prima

---

[11] Plaintiff had been hired as part of Dr. Turner's grant team. See affidavit of Brian P. Bowie, Associate Vice-President for Human Resources at TJU, at ¶ 3 ("Ms. Druker, in addition to James Cocroft and Daozhi Zhang, reported directly to Dr. Barbara Turner who resigned her position at TJU effective on or about December 31, 1999. Ms. Druker, Mr. Cocroft and Mr. Zhang supported Dr. Turner's grant funded research which would no longer be performed at TJU. Since the work that Ms. Druker and the other direct reports to Dr. Turner had been performing would no longer exist at TJU, and since the grant monies which funded a significant portion of their positions were no longer available at TJU, it was determined that Ms. Druker's, Mr. Cocroft's and Mr. Zhang's positions would be eliminated.") (footnote omitted).

facie showing of retaliation, TJU, through affidavits, has submitted legitimate, non-discriminatory explanations for plaintiff's inability to obtain a new position within TJU, none of which has been rebutted or made out to be pretextual by competent Rule 56 matters.

Here is a list of seven defense affidavits, with capsule identification of their contents:

- Elizabeth Smith, Administrator, Department of Psychiatry (Def. Exhibit 33) (resume received after offer had been made to another candidate);

- Thomas Falkowski, Business Manager for Division of Endocrinology (Def. Exhibit 34) (citing personality differences for decision not to hire);

- Barry Goldstein, Director of Division of Endocrinology, Diabetes and Metabolic Diseases (Def. Exhibit 35) (citing personality differences for decision not to hire);

- Eric Pownall, Business Manager, Sponsored Programs Accounting, Controller's Office (Def. Exhibit 36) (citing insufficient grant experience for decision not to hire);

- Cheryl Scully, Director of Sponsored Programs Accounting, Controller's Office (Def. Exhibit 37) (never spoke with plaintiff) (plaintiff believes Pownall agreed to recommend her to Scully, but did not do so, Plaintiff's dep. at 390-92);

- Regina Gallagher, Administrator of Microbiology Department (Def. Exhibit 38) (no position available at time of interview, cited lack of qualifications and aggressive personality as reason for refusal to interview plaintiff when position became available);

- Ronald Myers, M.D., Department of Medical Oncology (Def. Exhibit 39) (not qualified for any open position).

All of these affiants deny having been aware that plaintiff had complained of discrimination. See Def. Exhibit 21, ¶ 5; Def. Exhibit 33, ¶ 4; Def. Exhibit 34, ¶ 6; Def. Exhibit 35, ¶ 4; Def. Exhibit

36, ¶ 5; Def. Exhibit 37, ¶ 4; Def. Exhibit 38, ¶ 5; Def. Exhibit 39, 4. Plaintiff has not come forward with evidence, direct or indirect, to the contrary. See Jones v. City of Philadelphia, 198 F.3d 403, 415 (3d Cir. 1999) (affirming summary judgment on retaliation claim where plaintiff did not produce evidence that actors were aware of plaintiff's involvement in protected activity).

Additionally, with the lone exception of Dr. Myers, there is no evidence that any of these individuals spoke with plaintiff's supervisor, Dr. Turner about hiring her.[12] See Def. Exhibits 33-37.

Plaintiff testified in her deposition that Dr. Turner had implied to her that she would prevent her from obtaining a job at TJU. Plaintiff's Dep. at 328.[13] She argues that the circumstances including the wording of the affidavits provide an inference that Dr. Turner did so and used means other than oral communication - i.e., she influenced and turned professional staff against plaintiff by her negative attitude toward her. See Plaintiff's brief at 21- 23. However, plaintiff provides no evidence in support of this subjective supposition. "A plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment." Solomon v. Society of Automotive Engineers, 2002 WL 1754409, at *1, (3d Cir., July 30, 2002), citing Celotex Corp v. Catrett, 477 U.S. 317, 324 (1986) (affirming summary judgment and finding "[t]he District Court correctly rejected all of these allegations [of racial discrimination], stating that the only evidence in support of these claims was [plaintiff's] own testimony"). Without evidence

---

[12] Plaintiff testified that when she spoke with Dr. Myers about a position as a statistical analyst, Dr. Myers said he had spoken to Dr. Turner. It was plaintiff's belief that her comments had not been favorable. Plaintiff's dep. at 381-85.

[13] On November 3, 1999, plaintiff met with Dr. Geno Merli, to whom Dr. Turner reported, and believed she might be eligible for an upcoming job. Supra, at 3-4. However, there is no evidence other than plaintiff's testimony that a job might become available, and Dr. Merli testified that none came into existence. Merli Dep. at 20.

9

that the reasons given for plaintiff's inability to obtain a position at TJU present a triable issue of pretext, plaintiff cannot overcome the operation of Rule 56.

Moreover, plaintiff does not dispute that Dr. Turner cannot be subject to individual liability under Title VII. See Sheridan v. E.I. DuPont DeMours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996), cert. denied, 521 U.S. 1129 (1997) ("We are persuaded that Congress did not intend to hold individual employees liable under Title VII.").

As to Count IV, alleging harassment and discrimination as a PHRA violation, defendants contend that plaintiff did not establish a prima facie case. The same procedural framework applies to plaintiff's claim for discrimination under the PHRA as applies in a Title VII case. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000), citing Jones v. City of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999) ("The analysis required for adjudicating [a plaintiff's] claim under PHRA is identical to a Title VII inquiry.").

A prima facie discrimination case requires an adverse employment action. Jones, 198 F.3d at 411 (citations omitted). Plaintiff has not proffered one. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (citations omitted). Durham Life Ins Co. v. Evans, 166 F.3d 139, 153 (3d Cir. 1999) (depriving employee of secretary and office was tangible adverse action); Nelson v. Upsala College, 51 F.3d 383, 387-88 (3d Cir. 1995) (arguably defamatory remarks that did not affect employment could not constitute adverse action for Title VII purposes). Here, none of the derogatory incidents related by plaintiff, however deplorable they may have been, materially affected her employment status with TJU. "Objectionable conduct

attributable to an employer is not always sufficient to alter an employee's terms, conditions, or privileges of employment and is thus not always sufficient to violate Title VII." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1297 (3d Cir. 1997).

The sole adverse employment action experienced by plaintiff was the termination of her position.[14] Without sufficient evidence of any other adverse employment action, plaintiff cannot make out a prima facie discrimination case for the period predating that occurrence.

BY THE COURT:

*s/ EDMUND V. LUDWIG*
Edmund V. Ludwig, J.

---

[14] Plaintiff's Declaration in opposition to summary judgment states that Dr. Turner refused to provide her with a performance evaluation, which caused her not to receive a pay raise - an adverse action. Plaintiff's Declaration at 27; Plaintiff's brief at 14. However, plaintiff testified during her deposition that Dr. Turner did prepare an Employee Performance Appraisal; plaintiff produced a copy in discovery. See Plaintiff's deposition, at 447-55; Def. Exhibit 49. Plaintiff also argues that Dr. Turner interfered with plaintiff's efforts to find a new position at TJU, though no material evidence to this effect was produced, see supra, and further that Dr. Turner did not provide her with a letter of reference, which "likely affected Ms. Druker's job prospects." Plaintiff's brief at 14. Plaintiff did not agree with Dr. Turner's assessment of her, see Def. Exhibit 49. However, there is no tangible evidence that the lack of a letter of reference prevented plaintiff from obtaining a job. See Solomon, 2002 WL 1754409, at *1, citing Celotex, 477 U.S. at 324. Plaintiff's subsequent employment attenuates this argument.